RECEIVED
IN ALEXANDRIA, LA.
SEP 2 4 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 07-10018 |
|---|---|
| -vs- | JUDGE DRELL |
| WILLIAM O. BELT (01),<br>TRACY BRYANT BELT (02), and<br>JULIE ANN BERNARD (03) | MAGISTRATE JUDGE KIRK |

## RULING AND ORDER

Before the Court is a "Motion to Dismiss Indictment" filed by William O. Belt ("Bill Belt") (Document No. 81) and adopted by Tracy Belt (Document No. 86).  The Government has filed its opposition to the motion (Document No. 90), and a reply brief has been submitted (Document No. 91).  In light of the complicated nature of the legal issues involved, supplemental memoranda were accepted by the Court (Document Nos. 115, 117, and 119).  At the request of all counsel, the motion was submitted on briefs (Document No. 99).  For the reasons set forth herein, the motion will be DENIED.

### I. BACKGROUND

In the indictment filed August 1, 2007, Bill Belt, Tracy Belt, and Julie Ann Bernard ("Julie Bernard") are charged with one count of conspiracy in violation of 18 U.S.C. § 371 (Count 1).  Bill and Tracy Belt are also charged with seven counts of mail fraud under 18

U.S.C. §§ 1341 and 2 (Counts 2 - 9) and one count of criminal forfeiture in violation of 18

U.S.C. § 982(a)(2) (Count 12).   Additionally, Julie Bernard is charged with one count of

making a false statement under 18 U.S.C. § 1001 (Count 10) and one count of obstruction

of justice in violation of 18 U.S.C. § 1503 (Count 11).   (Document No. 2.)   All three

defendants entered pleas of not guilty when they appeared before Magistrate Judge

James D. Kirk on August 22, 2007, and they were released on personal recognizance.

(Document No. 15.)  This matter is fixed for a fourteen-day jury trial beginning October

12, 2010.  (Document No. 104.)

The instant motions are filed under Fed. R. Crim. P. 12(b)(3) and seek to dismiss

the indictment as fatally defective.

## II.  LAW AND ANALYSIS

A.  Motion to Dismiss Standard

Under Fed. R. Crim. P. 12(b), "[a] party may raise by pretrial motion any defense,

objection, or request that the court can determine without a trial of the general issue."

In U. S. v. Flores, 404 F.3d 320, 324 (5th Cir. 2005), the appellate court explained:

> In this circuit, "'[t]he propriety of granting a motion to dismiss an
> indictment under [Fed. R. Crim. P.] 12 by pretrial motion is by-and-large
> contingent upon whether the infirmity in the prosecution is essentially one
> of law or involves determinations of fact.'" United States v. Korn, 557 F.2d
> 1089, 1090 (5th Cir. 1977) (quoting United States v. Miller, 491 F.2d 638, 647
> (5th Cir. 1974)). "If a question of law is involved, then consideration of the
> motion is generally proper." Id. (citing United States v. Jones, 542 F.2d 661,
> 664 (6th Cir. 1976)).

Chief Judge King, writing for the Flores court, further noted,

> "'[A] district court may make preliminary findings of fact necessary to
> decide the questions of law presented by pre-trial motions so long as the
> court's findings on the motion do not invade the province of the ultimate

2

finder of fact.'" <u>United States v. Shortt Accountancy Corp.</u>, 785 F.2d 1448, 1452 (9th Cir.1986) (<u>quoting</u> <u>United States v. Jones</u>, 542 F.2d 661, 664 (6th Cir.1976)); <u>United States v. Coia</u>, 719 F.2d 1120, 1123 (11th Cir.1983).

<u>Flores</u>, 404 F.3d at 324, n. 6.

Fed. R. Crim. P. 12(b)(3)(B) requires that "a motion alleging a defect in the indictment" be filed prior to trial, but "a claim that the indictment . . . fails . . . to state an offense" may be filed at any time while the case is pending.  The Fifth Circuit Court of Appeals noted in <u>U. S. v. Kay</u>, 359 F.3d 738, 742 (5th Cir. 2004)(internal citations and footnotes omitted):

> As a motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment, we are required to "take the allegations of the indictment as true and to determine whether an offense has been stated."

> "[I]t is well settled that an indictment must set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged." The test for sufficiency is "not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimum constitutional standards"; namely, that it "[(1)] contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and [(2)], enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

B. The "Honest Services" Issue

18 U.S.C. § 1341 provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud . . . for the purpose of executing such scheme or artifice or attempting so to do, . . . knowingly causes to be delivered by mail . . . any . . . matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

As recently explained by the Supreme Court in <u>Skilling v. United States</u>, 561 U. S. ____, 130 S.Ct. 2896 (2010), between 1941 and 1986, the concept of an intangible right

3

to "honest services" was read into § 1341 through a series of expansive jurisprudential interpretations. However, as Justice Ginsburg, writing for the Skilling Court noted, the case of McNally v. United States, 483 U. S. 350 (1987), "stopped the development of the intangible-rights doctrine in its tracks." Skilling, 130 S.Ct. at 2927. In McNally, the Court refused, without clear instruction from Congress, to include within the traditional definition of mail fraud a scheme that "defraud[ed] the citizens . . . of their right to have the [government's] affairs conducted honestly." Id. (Citations omitted.)  In response, Congress "swiftly" enacted 18 U.S.C. § 1346, "specifically to cover one of the 'intangible rights' that lower courts had protected . . . prior to McNally: 'the intangible right of honest services.' " Id. (Citations omitted.)

"Scheme or artifice to defraud," as used in § 1341, is now defined by § 1346 to include "a scheme or artifice to deprive another of the intangible right to honest services."  In the more than twenty years that have elapsed since § 1346 was enacted, its broad language has resulted in significant divisions among the Courts of Appeals regarding the type of conduct it is intended to criminalize.  The Skilling Court, however, has clarified that § 1346 survives a vagueness challenge when it is applied to "bribery and kickback schemes." Skilling, 130 S.Ct. at 2907. Specifically, Justice Ginsburg states:

> Although some applications of the pre- McNally honest-services doctrine occasioned disagreement among the Courts of Appeals, these cases do not cloud the doctrine's solid core: The "vast majority" of the honest-services cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes.  Indeed, the McNally case itself, which spurred Congress to enact § 1346, presented a paradigmatic kickback fact pattern.  Congress' reversal of McNally and reinstatement of the honest-services doctrine, we conclude, can and should be salvaged by confining its scope to the core pre- McNally applications.

4

\* \* \*

> In view of this history, there is no doubt that Congress intended § 1346 to reach *at least* bribes and kickbacks. Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine.  To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes *only* the bribe-and-kickback core of the pre- McNally case law.

Id. at 2930-2931. (Emphasis in original.)  (Footnotes and internal citations omitted.)

The prime example given by the Skilling Court of this "bribe-and-kickback core" of cases is as follows:

> McNally, as we have already observed, involved a classic kickback scheme: A public official, in exchange for routing Kentucky's insurance business through a middleman company, arranged for that company to share its commissions with entities in which the official held an interest. This was no mere failure to disclose a conflict of interest; rather, the official conspired with a third party so that both would profit from wealth generated by public contracts. Reading § 1346 to proscribe bribes and kickbacks– and nothing more–satisfies Congress' undoubted aim to reverse McNally on its facts.

Id. at 2932. (Internal citations omitted.)

Given this definition from the Supreme Court, we now must decide whether the conduct charged in the current indictment runs afoul of § 1346.  The indictment defines the "conspiracy" outlined in Count 1 as an agreement by Defendants "to use the mails and interstate carriers for the purpose of executing the scheme and artifice they devised to defraud the citizens of Avoyelles Parish of the honest and faithful services of their Sheriff." (Document No. 2, p. 2.)  The conspiracy was allegedly carried out, in part, by the performance of the overt acts identified in Counts 2 - 9, which are the mailings of

5

certain checks made payable to companies known as Cajun Callers and Infinity Communications.

The "object of the conspiracy" is set forth in the indictment as follows:

> The primary object of the conspiracy was to promote and cover up the receipt of proceeds, directly and indirectly, by the Defendant, WILLIAM O. BELT, and members of his family, from the operation of phone services provided at jails operated by the Avoyelles Parish Sheriff's Office. **It was part of the conspiracy that, in exchange for authorizing, as Sheriff of Avoyelles Parish, the operation of certain phone services at the jails operated by the Avoyelles Parish Sheriff's Office, the Defendants, WILLIAM O. BELT and TRACY BRYANT BELT, along with other family members, would receive proceeds from the operation of those phones. It was also part of the conspiracy that businesses the Defendant, WILLIAM O. BELT, had an interest in would receive proceeds from the operation of phones at jails operated by the Avoyelles Parish Sheriff's Office.**

(Document No. 2, p. 2.) (Emphasis added.)

Of particular interest are the highlighted portion of the indictment and the following phrase from Skilling, 130 S.Ct. at 2392:

> McNally, as we have already observed, involved a classic kickback scheme: A public official, in exchange for routing Kentucky's insurance business through a middleman company, arranged for that company to share its commissions with entities in which the official held an interest.

If one could conceptually place these sentences on top of each another, they would virtually overlap. Thus, the "classic kickback scheme" as defined by Skilling is, in essence, the scenario set forth in the instant indictment.

At this time, we decline the invitation of the parties to delve into the facts surrounding the making of the payments themselves, since such exploration is not necessary in light of the clear wording of the indictment. That exercise would also require us to do *substantial* determinative fact finding, since, as presented by the

6

motions, there are *many* facts not of record or disputed in the record. These include complete identification of the "middleman" in these transactions. Although counsel for the government did verbally outline its theory of prosecution to some degree at a recent pretrial conference, he did not explain, for example, who or what "Edgemont Partners" is. Its relationship to the defendants and others is not set forth in the record with anything like the clarity that would be necessary for factual definition. This is only one example, and we are not allowed to treat a criminal motion to dismiss like a civil motion for summary judgment. See Flores, 404 F.3d at 324 (holding that an indictment may only be dismissed based on the resolution of a legal issue in the presence of undisputed facts).

We find that, although the indictment could have been more artfully drawn, the allegations it contains, taken as true, fairly inform the defendants of the crime charged and enable them to plead so as to bar future prosecutions for the same offense. See Kay, 359 F.3d at 742.

### III.  CONCLUSION

For these reasons,

IT IS ORDERED that the "Motion to Dismiss Indictment" filed by William O. Belt (Document No. 81) and adopted by Tracy Belt (Document No. 86) is DENIED.

SIGNED on this 24 day of September, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

7